# GRANT-JETER COMPANY *v.* AMERICAN REAL ESTATE COMPANY.

1. An agreement between the owner of an apartment house and a real-estate agent, by which the owner did "give, grant, and sell to" said agent (a corporation), "its successors and assigns, the sole and exclusive right for the present leases, and for a period of five (5) years, beginning September 1, 1923, to rent, manage, and supervise" said property, and did "confer upon said agent full and general power to make leases in his name, and in the name of his successors and assigns, with tenants and prospective tenants for said premises, . . to purchase supplies for said premises, to collect the rentals thereon, to hire and discharge janitors, . . and in general to manage and supervise said property," did not constitute a covenant running with

the land, nor did it confer upon the agent an easement in the property, nor was it such a restrictive agreement relating to the use and enjoyment of the land as equity treats as one going with the land into the hands of a purchaser with notice; but such agreement is of a collateral nature to the land, and is a personal obligation of the maker, which will not bind or pass to assignees even where they are expressly named and take with notice of such agreement.

2. Courts of equity will not generally undertake to enforce specific performance of contracts involving personal services which are material or mechanical in character; and the facts of this case do not bring it within any of the exceptions to the above rule.

3. The petition makes a case of a mere breach of a personal contract, for which the maker is liable in damages; and it not being alleged or shown that irreparable injury will result to the plaintiff, a court of equity will not decree specific performance of the contract.

4. The court properly refused to grant an interlocutory injunction.

No. 4344. October 15, 1924.

Petition for injunction. Before Judge Ellis. Fulton superior court. March 28, 1924.

*Troutman & Troutman,* for plaintiff.

*Hewlett & Dennis,* for defendant.

HINES, J. The owner of the Sidney Apartments in the City of Atlanta, on April 18, 1923, entered into a written contract with the Grant-Jeter Company, a real-estate renting agent, whereby, for a good and valuable consideration, he did "give, grant, and sell to said company, its successors and assigns, the sole and exclusive right for the present leases, and for a period of five (5) years, beginning September 1, 1923, to rent, manage, and supervise" said property, and did further "bargain and confer upon said agent full and general power to make leases in his name, and in the name of his successors and assigns, with tenants and prospective tenants for said premises, . . to purchase supplies for said premises, to collect the rentals thereon, to hire and discharge janitors, . . and in general to manage and supervise said property." This contract contained the further stipulation, "that this exclusive agency contract and agreement shall be binding upon all corporations, their successors and assigns, and upon all persons, their heirs and assigns, who shall acquire the title to said property and to whom the interest of said owner shall or may accrue by purchase or otherwise," and "all rights, obligations, and benefits of this agreement shall inure to the benefit of and be binding upon the heirs, representatives, successors, and assigns of the parties hereto." The Grant-Jeter Company was to receive a com-

6

mission of 5 per cent. on all rents accruing upon leases made by it during said term. On June 1, 1923, E. F. Culpepper, the owner, sold and conveyed this property to John R. Webb. While Webb owned the property the real-estate agent made several leases to tenants for the year beginning September 1, 1923, and ending August 31, 1924. On July 28, 1923, the American Real Estate Company entered into a written contract with Webb, by which it agreed to buy from him this property upon certain terms and conditions. At the time of this purchase the purchaser had no notice of the above contract between Culpepper and the real-estate agent, which was not recorded until August 2, 1923. On August 15, 1923, the American Real Estate Company, through its president, was given actual notice of said contract and of the rights of the Grant-Jeter Company thereunder. On July 30, 1923, the American Real Estate Company entered into a contract with the Calhoun Company for the leasing of these apartments from September 1, 1923, to September 1, 1924. There was evidence authorizing the trial judge to find that none of the apartments had been leased by Webb or the Grant-Jeter Company on July 30, 1923. There was evidence authorizing him to find that the Grant-Jeter Company, on June 18, 1923, leased two of said apartments for the term beginning September 1, 1923, and ending August 31, 1924, and that this company, between August 2, 1923, and August 29, 1923, had leased nine of said apartments for said term.

On September 1, 1923, Webb by his warranty deed conveyed said property to the American Real Estate Company. Before said deal was executed the American Real Estate Company had actual notice of the execution of the contract between Culpepper and the Grant-Jeter Company, and of the rights of the latter company thereunder. On July 28, 1923, the president of the American Real Estate Company notified the Grant-Jeter Company, that the former had entered into a contract for the purchase of this property from Webb, and to make no leases of said property. The Grant-Jeter Company collected a portion of the rents for the month of September, 1923, and paid the same over to the American Real Estate Company; but the collection of these rents was done over the protest and without the consent of the latter. The American Real Estate Company refuses to be bound by said contract between Culpepper and the Grant-Jeter Company, refuses to recognize it,

asserts that the Grant-Jeter Company has no right to rent or manage said premises, and is threatening to notify the tenants not to pay over any further rents to said agent. The Grant-Jeter Company prays for specific performance of said contract, and for an injunction to prevent the American Real Estate Company from interfering with its right to rent and manage said property, collect the rents therefor, and receive its commissions thereon. The trial judge declined to grant an interlocutory injunction; and to this judgment the Grant-Jeter Company excepted.

To constitute a covenant running with the land, there must first be an interest or estate therein granted, the covenant must relate to the interest or estate granted, and the act·to be done must concern the interest created or title conveyed. If the covenant is of a collateral nature to the land, and is incapable in law of attaching to the interest or estate granted, it is a personal obligation, and will not bind or pass to assignees, even where they are expressly named. *Howard Manufacturing Co.* v. *Water Lot Co.,* 53 *Ga.* 689; *Atlanta &c. R. Co.* v. *Jackson,* 108 *Ga.* 634 (34 S. E. 184); *Muscogee Mfg. Co.* v. *Eagle & Phenix Mills,* 126 *Ga.* 210 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139). But counsel for the plaintiff do not contend that this contract creates a covenant running with the land. Their contention is that this agreement is one which restricts the use of the land, and that equity will treat it as one going with the land, and one which a court of equity will enforce against a purchaser with notice of the contract. The reasoning is that rent is a real chattel, that a contract giving to an agent the exclusive right for a term of years to lease real estate for its owner and collect the rents for him is directly connected with the land and its use and enjoyment, and that for this reason a court of equity will specifically enforce it against a purchaser with notice of the contract. Undoubtedly rent is an incorporeal hereditament. Blackstone so denominates it, and so lists it in his enumeration of incorporeal hereditaments. 1 Cooley's Blackstone (4th ed.), 467. But there is a vast difference between rent and the right of an agent to lease, under contract with the owner, real estate of the latter, to purchase supplies for its maintenance, collect the rents, pay the same over to the landlord, and receive a commission on the rents so collected for his services in discharging these duties. Such an agreement is not one in the nature of an easement,

or one running with the land; and does not bind a purchaser from the owner of the land. *Greer* v. *Pope,* 140 *Ga.* 743 (79 S. E. 846); *Atlantic &c. R. Co.* v. *Southern Pine Co.,* 116 *Ga.* 224 (42 S. E. 500); *Henderson Lumber Co.* v. *Waycross &c. R. Co.,* 148 *Ga.* 69 (96 S. E. 263). Being thus a personal covenant, the plaintiff has no cause of action against the American Real Estate Company.

Nor does this case fall in that class of restrictive agreements relating to the use and enjoyment of land which equity treats as one going with the land into the hands of a purchaser with notice. *Rosen* v. *Wolff,* 152 *Ga.* 578 (110 S. E. 877). To bring a case within this class, the agreement must restrict the use and enjoyment of the land. Under this agreement the plaintiff has no right to use or enjoy these premises.

Furthermore, the petition does not make a case for specific performance. It alleges a mere breach of a personal contract, for which the maker is liable in damages. It is not shown that irreparable injury will result to the plaintiff. For this reason a court of equity will not decree specific performance of the contract. *Justices* v. *Croft,* 18 *Ga.* 473. Courts of equity will not generally undertake to enforce the specific performance of contracts for personal services which are material or mechanical in character. *Greer* v. *Pope,* supra. For the above reasons the chancellor rightly declined to grant an injunction.

*Judgment affirmed. All the Justices concur.*