**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 9, 2017**

# In the Court of Appeals of Georgia

A16A1788. NORTH BAY AVALON, LLLP v. SPEEDWAY, LLC   McF-073
   et al.

McFADDEN, Presiding Judge.

This case involves the enforceability of restrictive covenants in a deed. The trial court ruled that the restrictive covenants run with the land and bind appellant North Bay Avalon, LLLP as successor in title to the original grantee, and that the benefits of the restrictive covenants are held in gross, so that they are enforceable by appellee Speedway, LLC, the grantor, even though Speedway no longer owns an interest in the property or nearby property. We conclude that the covenants are enforceable in equity, regardless of whether or not the burdens and benefits of the covenants run with the land or are held in gross. We reject North Bay's argument that the covenants are unconstitutional restraints in trade. So we affirm the trial court.

1. *Facts*.

The facts are largely undisputed. In May 2002, Speedway SuperAmerica, LLC (Speedway, LLC's predecessor) sold land at the intersection of Bouldercrest Road and Interstate 285 to one of North Bay's predecessors in title. The deed, which was recorded in the DeKalb County property records, contains two restrictive covenants limiting use of the land for a gas station:

> By acceptance hereof, Grantee agrees that for a period of twenty-five (25) years from and after the date of this conveyance, the premises shall not be used as a Truck Stop for the sale, marketing, storage or advertising of truck diesel and the premises shall also be restricted from the sale of any petroleum fuels other than Marathon, Texaco, Mobil, BP or Shell brand fuels for a period of fifteen (15) years from and after the date of this conveyance, and that this restriction shall be a covenant running with the land and shall be contained in and made a part of every deed, mortgage, lease or other instrument affecting title to said premises.

North Bay purchased the property in 2013. It was aware of the restrictive covenants when it purchased the property. Two months later, North Bay filed this quiet title action to remove the restrictive covenants in its chain of title.

2. *Enforceability*.

North Bay argues that the covenants are unenforceable because Speedway no longer owns an interest in the property or an adjacent property, and no Georgia court ever has enforced a covenant where the benefits are held "'in gross,' i. e., as a personal right and not running with the land on the benefit side." *Barton v. Gammell*, 143 Ga. App. 291, 293 (2) (b) (238 SE2d 445) (1977) (citation omitted). We find that regardless of whether the covenants or their benefits run with the land or are held in gross, the covenants are enforceable in equity.

Our Supreme Court has held that

[c]ovenants relating to land, or its mode of use or enjoyment, are enforceable against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. *It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it.* Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights. Whether the . . . covenant run[s] with the land or [is] an equitable servitude, it is clear that a restrictive covenant . . . is an enforceable covenant against a purchaser with notice.

3

*Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996) (emphasis supplied; citations omitted). See also OCGA § 23-1-16 ("He who takes with notice of an equity takes subject to that equity."). Here, the covenants concern the use of the land, and it is undisputed that North Bay had notice of them when it purchased the property. Consequently, the trial court correctly ruled that the covenants are enforceable.

3. *Standing*.

North Bay argues that Speedway's lack of interest in the property or an adjacent property, as well as its lack of any legitimate interest in the covenants' enforcement, defeats standing. We disagree.

The person entitled to the benefit of a covenant has standing to enforce it. See generally *Jones v. Gaddy*, 259 Ga. 356, 357 (2) (380 SE2d 706) (1989); *Barton v. Atkinson*, 228 Ga. 733, 743 (2) (187 SE2d 835) (1972). Thus as long as Speedway was intended to benefit from the covenants, it has standing to enforce them, even if it retained no interest in the burdened property nor an adjacent property. *Barton*, 228 Ga. at 743 (2). And the circumstances make clear that the covenants were intended to benefit Speedway by imposing certain limits on competition. "Though no language of the promise may suggest an intention that the benefit of the promise shall run, the

4

advantage from its running may be so obvious that it is proper to infer that the parties intended it to do so." *Jones*, 259 Ga. at 358 (citation omitted).

Further, to hold that the covenants are not enforceable because Speedway retained no interest in the burdened or nearby property would mean that the covenants were void from their inception; Speedway conveyed its entire parcel via the deed that contained the covenants, so from the beginning of the covenants' duration, Speedway no longer possessed an interest in the property. Speedway as grantor and the original grantee could not have intended the covenants to be void ab initio, and "covenants are to be construed so as to carry into effect the intention of the parties. . . ." *Smith v. Gulf Refining Co.*, 162 Ga. 191, 194 (134 SE 446) (1926) (citation and punctuation omitted).

In addition, the trial court expressly found as fact that Speedway has an interest in enforcing the covenants. He held that the covenants "provide a legitimate competitive advantage to Speedway by preserving an attractive opportunity for Speedway to reenter the Georgia market." The court held that the original reason Speedway entered the covenants – to prevent the property from being developed and used as a competitive truck stop or gas station – persists. Nothing in the record contradicts these factual findings.

Because Speedway and the initial grantee intended Speedway to benefit from the covenants, the trial court did not err in ruling that Speedway has standing to enforce them.

4. *Unconstitutional restraint of trade*.

North Bay argues that the restrictive covenants are not enforceable because they are unconstitutional, illegal restraints on trade. We disagree.

In its order transferring this appeal to our court, our Supreme Court held that "any issue as to whether the prohibition found in Ga. Const. Art. III, Sec. VI, Para. V[, which concerns restraints on trade,] applies to restrictive covenants on the use of land is well settled," citing *Godley Park Homeowners Assn. v. Bowen*, 286 Ga. App. 21, 23 (649 SE2d 308) (2007). In that case, we held that the constitutional provision and OCGA § 13-8-2 (a) (2), which renders contracts in general restraint of trade unenforceable as against public policy, do not apply to restrictive covenants on the use of real property. *Godley Park*, 286 Ga. App. at 23 (c). We observed that, "[i]n Georgia, it is clear that two parties may contract away or extend their rights as they please regarding the use of real property so long as public policy is not violated." Id. (citation omitted). For these reasons, we do not find that the trial court erred by holding that the covenants at issue were not unenforceable restraints on trade.

6

*Judgment affirmed. Miller, P. J., and McMillian, J., concur.*