**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 15, 2022**

# In the Court of Appeals of Georgia

A21A1718. CARDINALE v. KEANE.

A21A1719. CARDINALE v. JONES et al.

MILLER, Presiding Judge.

These two related appeals involve some of Matthew Charles Cardinale's numerous requests for public records from the City of Atlanta over many years. In Case No. A21A1718, Cardinale appeals pro se from the trial court's denial of his motion for a final default judgment on his claim for a civil penalty under the Georgia Open Records Act (OCGA § 50-18-70, et seq.) against the City of Atlanta's Director of Planning and Community Development, Tim Keane. In Case No. A21A1719, Cardinale appeals from the trial court's dismissal of his Open Records Act complaint against Michael Brandon Jones, a private attorney who represented the City in prior litigation, and City of Atlanta Councilman Antonio Brown.

In Case No. A21A1718, Cardinale argues that the trial court erred in concluding that he did not have a cause of action to seek a civil penalty against Keane for a violation of the Open Records Act and that the trial court abused its discretion by declining to award such a penalty. While we agree with Cardinale that the Open Records Act allows private citizens such as Cardinale to seek and obtain civil penalties, we conclude that Cardinale has not established that the trial court abused its discretion by declining to impose such a penalty against Keane, and so we affirm the judgment in this case.

In Case No. A21A1719, Cardinale argues that the trial court erred by dismissing his complaint on the ground that he did not sufficiently plead that Jones and Brown were "custodians" of the documents he requested and by again concluding that he did not have a cause of action to seek a civil penalty under the Open Records Act. We agree with Cardinale that he properly pled that Jones and Brown were custodians of the various records that he sought, and so we reverse the dismissal of Cardinale's claim against Brown, vacate the dismissal of his claim against Jones, and remand for the trial court to address an additional argument that Jones raised in his motion to dismiss.

*Case No. A21A1718*

2

"We review the trial court's entry of default judgment for an abuse of discretion. Where it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm. When the issue is a question of law, we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Citations and punctuation omitted.) *Laurel Baye Healthcare of Macon, LLC v. Neubauer*, 315 Ga. App. 474, 475 (726 SE2d 670) (2012).

According to Cardinale's complaint, the City of Atlanta's Community Development and Human Services Committee held a regularly scheduled meeting on February 11, 2020. During the meeting, Chairman Matt Westmoreland raised a motion for the Committee to enter into a private executive session that would be closed to the public. Chairman Westmoreland called for a voice vote on the motion, but he did not allow any time for votes to be heard before saying, "The ayes have it," and calling the Committee into the private session. The official minutes for the Committee meeting nevertheless reflected that a voice vote occurred. The Committee later amended the minutes to reflect the details of the vote, showing that all the members agreed to the motion.

On March 1, 2020, Cardinale sent a records request to Keane, specifically seeking documents related to any policies that allegedly prevented a third party, Ron

Shakir, from fully participating in neighborhood planning meetings. Cardinale sent two more requests for separate documents on March 5, 2020, and October 24, 2020. On December 3, 2020, Cardinale received responses for his two March requests, but he had yet to receive a response for his October request at the time he filed the complaint.

Cardinale filed a complaint against Keane and the City of Atlanta, seeking first a declaratory judgment under the Georgia Public Meetings Act (OCGA § 50-14-1, et seq.) against the City that no voice vote actually occurred for the Committee to enter into a private executive session during its February 11, 2020 meeting. Cardinale also sought a civil penalty against Keane under the Open Records Act for his failure to timely provide him with his requested documents, and he sought court costs and expenses. After the defendants failed to file an answer, the trial court found them in default, and Cardinale moved for the entry of a default judgment. Following a hearing, the trial court granted Cardinale a default judgment on his claims for a declaratory judgment and for court costs, but the trial court denied a judgment on his claim for a civil penalty. The trial court concluded that the Open Records Act only provides the Attorney General of Georgia with the power to obtain a civil penalty for a violation of the Act. The trial court alternatively held that, even if Cardinale could

4

seek a civil penalty, the trial court would exercise its discretion to decline to award a civil penalty in this case. This appeal followed.[12]

1. Cardinale first argues that the trial court erred in concluding that, as a private citizen, he was not entitled to seek a civil penalty under the Open Records Act. We agree that Cardinale has a cause of action to seek a civil penalty.

"On appeal, we review the lower court's interpretation of a statute de novo, as statutory interpretation is a question of law." (Citation omitted.) *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). Our analysis of the Open Records Act is guided by our familiar principles of statutory interpretation:

> A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger

---

[1] Keane filed a motion to dismiss this appeal on the grounds that Cardinale failed to serve him with his initial brief. Because Keane was able to timely file his response brief, and because Keane has not shown that he was otherwise prejudiced by the failure of service, the motion is denied.

[2] The City is not a party to this appeal.

legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

(Citations and punctuation omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017).

The [Open Records Act] was enacted in the public interest to protect the public — both individuals and the public generally — from "closed door" politics and the potential abuse of individuals and the misuse of power such policies entail. Therefore, the Act must be broadly construed to effect its remedial and protective purposes. The intent of the General Assembly was to encourage public access to information and to promote confidence in government through openness to the public and allow the public to evaluate efficient and proper functioning of its institutions.

(Citation omitted.) *Wallace v. Greene County*, 274 Ga. App. 776, 782 (2) (618 SE2d 642) (2005).

The Open Records Act provides that

[t]he superior courts of this state shall have jurisdiction in law and in equity to entertain actions against persons or agencies having custody of records open to the public under this article to enforce compliance with the provisions of this article. Such actions may be brought by any person, firm, corporation, or other entity. In addition, the Attorney General shall have authority to bring such actions in his or her discretion

6

as may be appropriate to enforce compliance with this article and to seek either civil or criminal penalties or both.

OCGA § 50-18-73 (a). It further provides that "a civil penalty may be imposed by the court in *any* civil action brought pursuant to this article against any person who negligently violates the terms of this article[.]" (Emphasis supplied.) OCGA § 50-18-74 (a).

We conclude that these provisions of the Open Records Act allow private plaintiffs to seek civil penalties for violations of the Act. The Supreme Court of Georgia recently interpreted nearly identical provisions of the Georgia Open Meetings Act (OCGA § 50-14-1, et seq.) to determine if a plaintiff may seek a civil penalty under that statute. *Williams v. DeKalb County*, 308 Ga. 265, 276-277 (4) (a) (840 SE2d 423) (2020). Similar to the Open Records Act, the Open Meetings Act provides that "a civil penalty may be imposed by the court in *any* civil action brought pursuant to [this Act,]" (Emphasis supplied.) OCGA § 50-14-6, and it includes a similarly worded section setting out the ability of the Attorney General of Georgia to enforce the Act's provisions. See OCGA § 50-14-5 (a). The Supreme Court recognized that, although the Open Meetings Act expressly authorizes the Attorney General "to bring enforcement actions, either civil or criminal, in his or her discretion

7

as may be appropriate to enforce compliance with [the Act]," OCGA § 50-14-5 (a), "[t]his grant of authority does not necessarily mean, however, that *only* the Attorney General has standing to bring civil enforcement actions." (Emphasis in original.) *Williams*, supra, 308 Ga. at 276 (4) (a).

> Instead, the enforcement authority of the Attorney General is "in addition to any action that may be brought by any person, firm, corporation, or other entity" in a superior court, which "shall have jurisdiction to enforce compliance with the provisions of the Act," including by granting an injunction or other equitable relief. This provision plainly contemplates that a private person (or firm, corporation, or other entity) can bring an action to enforce the Act to protect the public from closed-door politics. It follows that, although only a prosecutor empowered to initiate a criminal prosecution on behalf of the State may seek a criminal penalty under OCGA § 50-14-6, *any person, firm, corporation, other entity, or the Attorney General may request that the trial court impose a civil penalty*.

(Citations omitted and emphasis supplied.) Id. at 276-277 (4) (a).

The Open Records Act identically provides that "a civil penalty may be imposed by the court in *any* civil action brought pursuant to [this Act.]" (Emphasis supplied.) OCGA § 50-18-74 (a); compare OCGA § 50-14-6. The only textual difference between the two acts is that the Open Records Act specifically mentions

8

that the Attorney General may seek "either civil or criminal penalties or both," OCGA § 50-18-73 (a), whereas the Open Meetings Act instead mentions that the Attorney General may "bring enforcement actions, either civil or criminal." OCGA § 50-14-5 (a). But just as in *Williams* regarding the Open Meetings Act, we see nothing in OCGA § 50-18-73 (a)'s grant of authority that would mean that *only* the Attorney General has standing to bring an action to obtain a civil penalty, see *Williams*, supra, 308 Ga. at 276 (4) (a), nor do we see anything else in the statute that would potentially foreclose private plaintiffs from seeking a civil penalty for a violation of the Act. Considering that both the Open Records Act and the Open Meetings Act have the broad purpose to encourage public disclosure of governmental activity, we are compelled to conclude that this minor textual difference between the statutes is a distinction without any meaningful difference.

We therefore conclude that Cardinale, a private citizen, has a cause of action to seek a civil penalty under OCGA § 50-18-74 (a) and that the trial court erred in ruling otherwise.

2. Cardinale next argues that the trial court erred in its alternative decision to decline to award him a civil penalty. We conclude that Cardinale has not shown that the trial court abused its discretion in declining to award a civil penalty in this case.

9

First, the trial court correctly determined that the award of a civil penalty under the Open Records Act is a matter committed to a trial court's discretion. The Act provides that "a civil penalty *may* be imposed by the court in any civil action brought pursuant to this article against any person who negligently violates the terms of this article[.]" (Emphasis supplied.) OCGA § 50-18-74 (a). As we have recognized, "[t]he word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." (Citation omitted.) *Belt Power, LLC v. Reed*, 354 Ga. App. 289, 295 (2) (b) (840 SE2d 765) (2020). Reading the statute, we find no indication that the Legislature used the word "may" to imply anything other than that a trial court's power to award a civil penalty is discretionary.

Having concluded that the imposition of a civil penalty is discretionary, we further determine that Cardinale has failed to show that the trial court misapplied the law or the facts when it declined to award a civil penalty against Keane. See *Rockdale Hosp., LLC v. Evans*, 306 Ga. 847, 851 (2) (b) (834 SE2d 77) (2019) ("A trial court abuses its discretion when the exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding."). Cardinale's main

10

argument is that the trial court failed to provide a detailed explanation for its decision, but Cardinale has not identified any binding authority that would have required the trial court to make detailed written findings to support its decision.[3] Cardinale further insinuates that the trial court denied him a civil penalty because he had obtained a default judgment instead of a trial verdict, but he cites to nothing in the record, and we have found nothing, to support this speculation. See *Hosseini v. Donino*, 222 Ga. App. 697, 697 (1) (475 SE2d 665) (1996) ("The burden is on the party alleging error to show it affirmatively by the record.") (citation omitted). Cardinale has thus failed to show that the trial court made any error of law or fact, and so he has failed to show that the trial court abused its discretion by declining to award a civil penalty.

Accordingly, although Cardinale was authorized to seek a civil penalty in this case, we affirm the trial court's judgment declining to award a civil penalty against Keane.

*Case No. A21A1719*

---

[3] Instead, Cardinale has cited to federal case law concerning when a federal agency must make detailed explanations of its decision, case law which we do not find to be persuasive or applicable to a trial court's ruling under the Open Records Act.

[W]e review the trial court's grant of a motion to dismiss de novo. A motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation omitted.) *Mitchell v. Capehart*, 353 Ga. App. 461 (838 SE2d 125) (2020).

According to Cardinale's complaint in this case, Cardinale sent nine separate records requests to Jones, seeking documents related to the City's prior litigation over a voucher discrimination ordinance. Cardinale alleged that such litigation documents were potentially related to the City Council's decision to enter into the private executive session on February 11, 2020. Cardinale requested that Jones respond to his nine requests separately. Jones responded to Cardinale's requests, but he responded via a single email that addressed all of Cardinale's requests at once instead of providing the separate responses that Cardinale requested. Cardinale also submitted a records request to Councilman Brown seeking a written legal opinion that

12

Brown referenced during the February 11, 2020 meeting. Brown did not respond to Cardinale's request.

Cardinale then filed the instant complaint, seeking a civil penalty under the Open Records Act against Jones and Brown for their allegedly deficient responses to his records requests. Both Jones and Brown moved to dismiss Cardinale's complaint for failure to state a claim, and the trial court granted both motions. The trial court concluded that Cardinale's Open Records Act claims failed because the complaint did not allege facts supporting his contention that Jones and Brown had custody of the records that he sought, and thus Cardinale failed to show that they were "custodians" under the Act. The trial court alternatively concluded that the Open Records Act did not allow a private citizen such as Cardinale to sue to obtain civil penalties. This appeal followed.

3. In two related claims of error, Cardinale argues that he properly alleged that Jones and Brown had custody of the records so as to support his Open Records Act claims.[4] He specifically argues that the trial court erred by failing to presume as true his factual assertions that Brown and Jones had custody of the records and that the

_____

[4] We address Cardinale's claims of error in a different order than presented in his brief.

13

trial court erred by applying the wrong definition of the term "custodian." We conclude that the trial court erred by dismissing Cardinale's complaint on this issue.

The Open Records Act provides that the courts of Georgia have jurisdiction to entertain actions "against persons . . . having custody of records open to the public[.]" OCGA § 50-18-73 (a). The Act does not define precisely what it means for a person to "hav[e] custody" over records, but the American Heritage Dictionary[5] defines the word "custody" as "1. the control and care of a person or property, especially when granted by a court."[6] Thus, by using the term "custody," the statute contemplates

---

[5] *The American Heritage Dictionary*, Fifth Edition, copyright 2022. See *Palmer v. State*, 260 Ga. 330 (393 SE2d 251) (1990) (looking to the American Heritage Dictionary's definition of the word "custody" to determine "the ordinary signification" of the term); see also *Brown v. State*, 314 Ga. App. 1, 3 (723 SE2d 112) (2012) (looking to the American Heritage Dictionary's definition of the word "confine").

[6] In ascertaining the meaning of the phrase "custodian of records," the trial court used the definition "the person who keeps the records under his control and supervision" which we mentioned in our decision in *Hertz Corp. v. McCray*, 198 Ga. App. 484, 486 (1991). We note that the decision in *Hertz Corp.* only referenced that definition (which came from a secondary source) as an example of what Georgia evidentiary law does *not* require when a person is laying the foundation for the admissibility of business records, and the court did not apply that definition to any particular law. See id. In any event, we do not see much, if any, material difference in that definition and the one we apply today.

claims against persons who have some level of control and care over the records being sought.

Turning to the allegations in this case, Cardinale alleged in his complaint that Jones was "privately retained counsel" for the City of Atlanta and that he sought documents related to Atlanta's litigation history. Cardinale also alleged that Brown was a City of Atlanta Councilman, that the legal opinion he sought was specifically referenced by Brown during a meeting, and that the opinion was "distributed to all Council Members." In each case, he alleged that Brown and Jones were the "custodian[s]" of the records that he sought.

These allegations, particularly Cardinale's direct allegations that Brown and Jones were "custodians" of the records, were sufficient to survive a motion to dismiss. The trial court concluded that the allegations that Brown and Jones were custodians of the records were mere legal conclusions, but we have generally treated such allegations as factual assertions, such as when they are made in affidavits.[7] See, e.g., *Aquanaut Diving & Engineering, Inc. v. Guitar Center Stores, Inc.*, 324 Ga. App. 570, 574 (2) (751 SE2d 175) (2013) ("The attachments to the affidavit are admissible

_____

[7] Cf. *Crouch v. Bent Tree Community, Inc.*, 310 Ga. App. 319, 322 (3) (713 SE2d 402) (2011) ("[A]ffidavits containing mere legal conclusions and allegations present no issues of fact on a motion for summary judgment.") (citation omitted).

15

because the affidavit states that the affiant was the custodian of the records containing these documents[.]"); *Vadde v. Bank of America*, 301 Ga. App. 475, 478 (1) (a) (687 SE2d 880) (2009) (holding that affidavit was sufficient wherein employee averred that she was the "custodian of records").

Additionally, "the Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements." (Citation omitted.) *Babalola v. HSBC Bank, US, N.A.*, 324 Ga. App. 750, 752 (2) (751 SE2d 545) (2013). In addition, "we are required to hold pro se pleadings to less stringent standards than formal pleadings drafted by lawyers[.]" (Citation omitted.) Id. at 750 n.2. Reading these allegations under the lens applicable to this early stage of the litigation, it is at least somewhat probable that evidence could be introduced showing that Brown and Jones had control over, or care of, the records sought by Cardinale. Cardinale's complaint thus sufficiently alleged that Brown and Jones "had custody" of the requisite records that he sought, and we reverse the trial court's decision to the contrary.

At the same time, the Act provides that agencies "may, but shall not be obligated to," assign a "designated agency officer or employee" to whom all written

16

records requests must be made. OCGA § 50-18-71 (b) (1) (B). The Act specifies that the agency may designate "one of the following: the agency's director, chairperson, or chief executive officer, however denominated; the senior official at any satellite office of an agency; a clerk specifically designated by an agency as the custodian of agency records; or a duly designated open records officer of an agency[.]" Id. The parties extensively argued below as to whether the City of Atlanta had actually and properly designated specific record officers or employees under OCGA § 50-18-71 (b) (1) (B), and, if so, what impact that would have on the question of whether Brown or Jones could be considered as "having custody" of the documents requested by Cardinale if they were not so designated. The trial court, however, did not address these fact-based arguments in its ruling, and so we do not address them here at the motion to dismiss stage.[8]

---

[8] In arguing this issue, the parties made multiple references to evidence outside of the pleadings, such as the City of Atlanta's ordinances or the City of Atlanta's website that allegedly lists the City's designated records officers. We note that both motions to dismiss were designated as motions to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6) and that such motions are concerned solely with whether the allegations of the complaint are sufficient. We see no indication that the trial court considered any of these extraneous matters when rendering its ruling, however, and so we do not address the issue further. Cf. *Johnson v. RLI Ins. Co.*, 288 Ga. 309 (704 SE2d 173) (2010) ("On an appeal of a trial court's order that dismisses a cause of action for failure to state a claim upon which relief can be granted, . . . if matters outside the pleadings were presented to the trial court, which then considered

17

Accordingly, we conclude that the trial court erred in dismissing Cardinale's complaint on this basis.

4. In two related claims of error, Cardinale argues that the trial court erred in concluding that he could not obtain a civil penalty against Jones or Brown as a matter of law and that the trial court erred in ruling on this issue sua sponte when neither Brown nor Jones presented the issue in their respective motions to dismiss. For the reasons stated in Division 1, supra, we conclude that Cardinale may maintain a cause of action for a civil penalty under the Open Records Act, and so the trial court erred by holding to the contrary.

We therefore reverse the dismissal of Cardinale's claim against Brown. As to the trial court's dismissal of Cardinale's claim against Jones, we note that Jones raised an additional argument in his motion to dismiss that the trial court did not reach (namely, that Cardinale failed to state a claim because the allegations in the complaint establish that Jones' response to Cardinale's records request was sufficient under the Open Records Act). Accordingly, we vacate the dismissal of Cardinale's

---

these matters as it resolved the case, then a reviewing court is required to treat the resulting trial court's order as a ruling on a motion for summary judgment.") (citations omitted). We nevertheless make clear that the parties may raise and develop these arguments at a later point in the litigation.

claim against Jones and remand for the trial court to address this argument in the first instance.

*Judgment affirmed in Case No. A21A1718. Judgment reversed in part, vacated in part, and case remanded in Case No. A21A1719. Hodges and Pipkin, JJ., concur.*

19